IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GOLDEN GATE NATIONAL<br>SENIOR CARE, LLC, et. al. | : | |
| | : | |
| | : | |
| Petitioners, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | 15-17 |
| PAMELA L. BEAVENS, as Executrix<br>for the Estate of Agnew E. Beavens, | : | |
| | : | |
| | : | |
| Respondent. | : | |

MEMORANDUM

Stengel, J.                                                    August 20, 2015

This Federal Arbitration Act petition arises from a lawsuit filed by the Estate of

Agnew Beavens against Golden Gate National Senior Care and its related corporate

entities (GGNSC) in the Berks County Court of Common Pleas. GGNSC claims that the

state court action is covered by an Alternative Dispute Resolution Agreement, and it

moves for an order compelling arbitration. Pamela Beavens, the executrix of the estate,

moves to dismiss GGNSC's petition. For the reasons that follow, I will deny the motion

to dismiss and grant the motion to compel in part.

I       Background

On April 2, 2013, the Golden Living Center – Reading Facility (the Facility)

admitted Agnew Beavens as a resident. The facility is a wholly owned subsidiary of

GGNSC. Mr. Beavens remained in the care of GGNSC until his death on September 6,

2013. On December 4, 2014, Pamela Beavens, Mr. Beavens' daughter and executrix of

his estate, filed suit in the Berks County Court of Common Pleas pursuant to Pennsylvania's wrongful death and survival statutes. 42 Pa.C.S. §§ 8301; 8302. The lawsuit alleges that GGNSC was negligent in their care and treatment of Mr. Beavens.

GGNSC filed this FAA action claiming that the Berks County case is covered by an Alternative Dispute Resolution (ADR) Agreement which was executed by Ms. Beavens as power of attorney. The ADR Agreement, which consists of four plainly worded pages, provides that any dispute arising out of Mr. Beavens' stay at the Facility "shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration." Pet. ¶ 23; ADR Agreement, doc. no. 1-2, Art. II. The ADR Agreement broadly covers "all disputes arising out of or in any way relating to … the Resident's stay at the Facility … that would constitute a legally cognizable cause of action in a court of law…." Pet. ¶ 23; ADR Agreement, Art. III. Specifically, but not by way of limitation, the ADR Agreement illustrates that it covers claims for "negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer or safety standards…." Pet. ¶ 25; ADR Agreement Art. III.

The parties agreed to submit any disputes to JAMS for mediation. ADR Agreement, Art. IV. In big bold letter on the front page, the ADR Agreement warned Ms. Beavens that she was waiving Mr. Beavens' right to a jury trial to resolve any covered dispute:

**THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY …."**

Pet. ¶ 24; ADR Agreement, Art. II (emphasis in original). In the event that Mr. Beavens would file a claim with JAMS for mediation, the ADR Agreement limited Mr. Beavens' filing fee to $250. ADR Agreement, Art. V. "[A]ll other fees and costs, including any remaining JAMS case management fees and professional fees for the arbitrator's services, shall be paid by the Facility." Id. By signing the Agreement, Ms. Beavens acknowledged that "she ha[d] the right to seek advice of legal counsel concerning [the ADR] Agreement; … her signing of [the ADR] Agreement [was] not a condition of admission to [] the Facility; [and] … she [could] revoke [the ADR] Agreement … within thirty (30) days of signing it…." Pet. ¶ 27; ADR Agreement, Art. IX.

Upon receiving service of the Berks County Action, GGNSC requested that Ms. Agnew's counsel voluntarily dismiss the lawsuit and submit the claim to alternative dispute resolution. Pet. ¶ 30. Ms. Beavens declined the request. Id. As a result, GGNSC filed this FAA petition which demands a judgment that the ADR Agreement applies to the parties' dispute. Ms. Beavens has moved to dismiss the FAA petition, and GGNSC has moved to compel arbitration. GGNSC also seek an order staying the Berks County action which is currently in limited discovery on the issue of the ADR Agreement's validity. I will address Ms. Beavens' motion to dismiss first.

**II      Motion to Dismiss**

The ADR agreement at issue is the frequent subject of dispute in the federal courts of Pennsylvania. [1] Indeed, this is my second case arising from the GGNSC ADR Agreement. GGNSC Lancaster v. Roberts, 13-CV-5291, 2014 WL 1281130 (E.D. Pa. Mar. 31, 2014) (denying motion to dismiss). In each case, the respondents have moved to dismiss the petition asserting the same arguments which Ms. Beavens does here, and each theory has been soundly rejected. I will deny Ms. Beavens' motion to dismiss for similar reasons.

**a)  Lack of Subject Matter Jurisdiction**

Section 4 of the Federal Arbitration Act "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." Vaden v. Discover Bank, 129 S.Ct. 1262, 1271 (2009). GGNSC maintains that I have diversity jurisdiction pursuant to 28 U.S.C. § 1332. According to GGNSC, there is complete diversity of citizenship because Ms. Beavens is a citizen of Pennsylvania[2] and GGNSC is a citizen of Delaware and California. Ms. Beavens counters that GGNSC failed to join Francis Dunion and Denise Curry who are parties to the state court action. Ms. Beavens moves to dismiss the complaint because Ms. Dunion and Ms. Curry are

---

[1] See GGNSC Camp Hill W. Shore, LP v. Thompson ex rel. Mullen, 15-CV-445, 2015 WL 1932330 (M.D. Pa. Apr. 28, 2015); Golden Gate Nat. Seniorcare, LLC v. Lane, 14-CV-1957, 2015 WL 926432 (M.D. Pa. Mar. 4, 2015); GGNSC Equity Holdings, LLC v. Breslin, 14-MC-00450, 2014 WL 5463856 (M.D. Pa. Oct. 27, 2014); Golden Gate Nat. Senior Care, LLC v. Addison, 14-MC-0421, 2014 WL 4792386 (M.D. Pa. Sept. 24, 2014); GGNSC Lancaster v. Roberts, 13-CV-5291, 2014 WL 1281130 (E.D. Pa. Mar. 31, 2014); Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel. Fritz, 13-CV-02449, 2013 WL 6185604 (M.D. Pa. Nov. 25, 2013).

[2] It is the citizenship of the executor which determines federal diversity jurisdiction. Field v. Volkswagenwerk AG, 626 F.2d 293, 302 (3d Cir. 1980)

indispensable to the present action. As Ms. Dunion and Ms. Curry are citizens of

Pennsylvania, their joinder would destroy diversity jurisdiction.[3]

Federal Rule of Civil Procedure 19 specifies the circumstances in which the

joinder of a particular party is compulsory. Gen. Refractories Co. v. First State Ins. Co.,

500 F.3d 306, 312 (3d Cir. 2007). I must first determine whether Ms. Dunion and Ms.

Curry are necessary parties. Id. Rule 19(a) defines a necessary party as a person who

> claims an interest relating to the subject of the action and is so situated that
> the disposition of the action in the person's absence may … leave any of the
> persons already parties subject to a substantial risk of incurring double,
> multiple, or otherwise inconsistent obligations by reason of the claimed
> interest.

F.R.Cv.P. 19(a)(2)(ii). Ms. Dunion and Ms. Curry have an interest in this litigation

because the ADR Agreement covers Ms. Beavens' state claims against GGNSC, Ms.

Dunion and Ms. Curry. See GGNSC v. Breslin, 14-MC-00450, 2014 WL 5463856 at * 3

(M.D. Pa. Oct. 27, 2014) (interpreting an identical agreement). If I enforce the ADR

Agreement as to GGNSC but the state court does not enforce the ADR Agreement as to

Ms. Dunion and Ms. Curry, the parties will have inconsistent obligations. Ms. Dunion

and Ms. Curry are necessary parties. See PaineWebber inc. v. Cohen, 276 F.3d 197 (6th

Cir. 2001) (non-diverse parties with an interest in an arbitration agreement are necessary

parties); Owens-Illinois, Inc v. Meade, 186 F.3d 435 (4th Cir. 1999) (same); GGNSC v.

Thompson ex rel. Mullen, 15-CV-445, 2015 WL 1932330 at *2 (M.D. Pa. Apr. 28, 2015)

(interpreting identical agreement and determining that GGNSC managerial employee was

necessary party); GGNSC v. Lane, 14–CV–1957, 2015 WL 926432 at *3 (M.D.Pa.

---

[3] There is no dispute that the amount in controversy will exceed $75,000.

Mar. 4, 2015) (interpreting identical agreement and finding Ms. Curry was a necessary party); Breslin, 2014 WL 5463856 (same); GGNSC v. Addison, 14-MC-0421, 2014 WL 4792386 at *6-7 (M.D. Pa. Sept. 24, 2014) (same).

As already noted, I cannot join Ms. Dunion or Ms. Curry without destroying federal jurisdiction. Rule 19(b) instructs that I must "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." The factors which I must consider include:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Gen. Refractories Co., 500 F.3d at 319 (citing Fed. R. Civ. P. 19(b)). If I find that Ms. Dunion and Ms. Curry are indispensable to the action, I must grant Ms. Beavens' motion to dismiss. Id.

Concededly, the prejudice analysis of Rule 19(b) overlaps significantly with Rule 19(a). Id. at 320. (quoting Gardiner v. V.I. Water & Power Auth., 145 F.3d 635, 641 n. 4 (3d Cir.1998)). However, Rule 19(b) is a more demanding inquiry and requires more than the regurgitation of factors which Ms. Beavens recited in arguing that Ms. Curry and Ms. Dunion are necessary parties. The mere fact that Ms. Beavens may be faced with inconsistent procedural remedies is not enough to find that Ms. Dunion and Ms. Curry are indispensable parties. Indeed, the potential that Ms. Beavens will have to litigate her case in state court and in ADR is consistent with the FAA which favors "piecemeal resolution

when necessary to give effect to an arbitration agreement." <u>Moses H. Cone Mem'l Hosp.</u> <u>v. Mercury Constr. Corp.</u>, 460 U.S. 1, 20 (1983).[4] "Thus, the FAA's strong policy in favor of arbitration overcomes any prejudice [Ms. Beavens] may experience from piecemeal litigation that results from Curry's absence." <u>Breslin</u>, 2014 WL 5463856, at *4 (citing <u>Doctor's Associates, Inc. v. Distajo</u>, 66 F.3d 438, 446 (2d Cir. 1995). Ms. Beavens makes no other argument about prejudice. The first factor does not support joinder.

There is no need to address the second factor, because there is only minimal, if any, prejudice to cure. The third factor weighs against joinder as Ms. Beavens recognizes that she can have an adequate remedy without joining Ms. Dunion and Ms. Curry. Finally, the fourth factor weighs in favor of finding Ms. Dunion and Ms. Curry are indispensable because GGNSC can petition the state court to compel arbitration. However, the fourth factor alone is insufficient to find that Ms. Dunion and Ms. Curry are indispensable. The action may proceed in Ms. Dunion's and Ms. Curry's absence. <u>Thompson</u>, 2015 WL 1932330 at *2 (finding that action could proceed without GGNSC managerial employee); <u>Lane</u>, 2015 WL 926432 at *3 (same); <u>Breslin</u>, 2014 WL 5463856 (same); <u>Addison</u>, 2014 WL 4792386 at *6-7 (same).

---

[4] <u>Moses H. Cone</u> involved a dispute between a hospital, a contractor and an architect. The hospital and the contractor were bound by an arbitration agreement, but the hospital and the architect were not. Thus, <u>Moses H. Cone</u> is distinguishable because Ms. Dunion and Ms. Curry are parties to the ADR Agreement. But as the Sixth and Fifth Circuit have recognized, that difference is not determinative. *See* <u>PaineWebber, Inc. v. Cohen</u>, 276 F.3d 197, 203 (6th Cir. 2001); <u>Snap On Tools Corp. v. Mason</u>, 18 F.3d 1261, 1265–67 (5th Cir.1994).

### b)  __Colorado River__ Abstention

Next, Ms. Beavens asks that I dismiss this case pursuant to the Colorado River

doctrine. I previously rejected this argument in Roberts, and I do so again here. 2014 WL

1281130, at *1

The Colorado River doctrine allows a federal court to abstain from exercising

jurisdiction – either by staying or dismissing the federal action – when a parallel ongoing

proceeding is pending in state court. Nationwide Mut. Fire Ins. Co. v. George V.

Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009) (citing Colorado River Water

Conservation District v. United States, 424 U.S. 800 (1976)). The primary goal of this

doctrine is to prevent duplicative litigation. Colorado River, 424 U.S. at 817. This

doctrine is only to be applied in "exceptional circumstances" because "[a]bstention from

the exercise of federal jurisdiction is the exception, not the rule." Id. at 813. Whether

abstention under Colorado River is appropriate requires a two-part inquiry: 1) first, the

court must determine whether the state and federal court proceedings are, in fact,

"parallel;" and 2) if they are parallel, a court must then weigh several factors to decide if

"exceptional circumstances" warranting abstention are present. Nationwide Mut. Fire Ins.

Co., 571 F.3d at 307-08.

The Colorado River doctrine does not apply because the state and federal court

proceedings are not parallel. Proceedings are "parallel" if they "involve the same parties

and substantially identical claims, raising nearly identical allegations and issues." Yang v.

Tsui, 416 F.3d 199, 204 n. 5 (3d Cir. 2005) (citation and quotation marks omitted). Cases

are not parallel if they seek different remedies. *See* Harris v. Pernsley, 755 F.2d 338, 346

(3d Cir. 1985) (declining to abstain because federal court plaintiffs sought money damages but state court plaintiffs did not). That is the case here. Ms. Beavens seeks money damages in state court, and GGNSC seek an injunction in this court. The difference in remedies precludes <u>Colorado River</u> abstention. *See* <u>Perry v. Manor Care, Inc.</u>, 05-cv-5767, 2006 WL 1997480, at *6 (E.D.Pa. Jul. 14, 2006) (finding motion to compel arbitration not parallel to state court negligence action filed by nursing home resident); <u>Allied Nut and Bolt, Inc. v. NSS Industries, Inc.</u>, 920 F.Supp. 626, 630-31 (E.D. Pa. 1996).[5]

### c) Anti-injunction Act

Finally, Ms. Beavens moves to dismiss this petition arguing that the Anti-Injunciton Act restricts access to the remedy GGNSC seeks. Pursuant to the Anti–Injunction Act, federal courts may not issue injunctions to stay state court proceedings. 28 U.S.C. § 2283. However, three circumstances operate as exceptions to the Anti–Injunction Act: 1) when an injunction is expressly authorized by Congress; 2) when an injunction is necessary in aid of the court's jurisdiction; or 3) when an injunction is necessary to protect or effectuate the court's judgments. Id. "The FAA does not expressly authorize federal courts to enjoin state court proceedings." <u>Insurance Newsnet.com, Inc. v. Pardine</u>, No. 1:11–CV–00286, 2011 WL 3423081, at *4 (M.D.Pa. Aug. 4, 2011). Courts have instead found that an injunction pending arbitration falls under the second exception to the Anti–Injunction Act because it is necessary to aid the court's exercise of

---

[5] Since the cases are not parallel, I will not weigh the <u>Colorado River</u> factors; however, my analysis would be substantially similar to my decision in <u>Roberts</u>, 2014 WL 1281130.

jurisdiction over the petition to compel arbitration. *See*, *e.g*., <u>Thompson</u>, 2015 WL

1932330 at *6; <u>Lane</u>, 2015 WL 926432 at 4; <u>Breslin</u>; 2014 WL 5463856 at 5; <u>Roberts</u>,

2014 WL 1281130 at n. 19; <u>Insurance Newsnet.com, Inc.</u>, 2011 WL 3423081 at *4. Thus,

I have authority under the Anti-Injunction Act to stay the state court proceedings.

     Having rejected each of Ms. Beavens' arguments, I will deny her motion to

dismiss.

**III     Motion to Compel Arbitration**

     **a)  Standard of review**

     I may resolve GGNSC's motion to compel arbitration at the pleading stage

without the benefit of discovery if "it is apparent, based on 'the face of [the petition], and

documents relied upon in the [petition],' that certain of a party's claims 'are subject to an

enforceable arbitration clause'…." <u>Guidotti v. Legal Helpers Debt Resolution, L.L.C.</u>,

716 F.3d 764, 776 (3d Cir. 2013) (citing <u>Somerset Consulting, LLC v. United Capital</u>

<u>Lenders, LLC</u>, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). On the other hand, I must deny

the motion to compel without prejudice and order limited discovery on the issue of

arbitrability when "the complaint and its supporting documents are unclear regarding the

agreement to arbitrate." <u>Id</u>. If the agreement is facially valid, the opposing party may

advance the issue of arbitrability to discovery if it puts forth "reliable evidence … 'that it

did not intend to be bound' by the arbitration agreement…." <u>Id</u>. at 774 (quoting <u>ParKnit</u>

<u>Mills Inc. v. Stockbridge Fabrics Co., Ltd.</u>, 636 F.2d 51, 55 (3d Cir. 1980)). Such reliable

evidence must be more than "naked assertions." <u>Id</u>. If I deny the motion to compel

without prejudice, GGNSC may renew the motion following discovery, and I will review

that motion under a summary judgment standard. Id. at 776.

In weighing the motion to compel at the pleading stage, I will consider GGNSC's

petition and its exhibits which include the state court complaint, the ADR Agreement and

the durable power of attorney. This is a two part inquiry. First, I must determine whether

a valid agreement to arbitrate exists. Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529,

532 (3d Cir. 2005) (citing PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d

Cir.1990)). If the ADR Agreement is enforceable, I will resolve whether Ms. Beavens'

state court complaint falls within the scope of the ADR Agreement. Id.

### b) Validity of the agreement

Ms. Beavens argues that the ADR Agreement is unenforceable because it is

unconscionable. "[I]n determining unconscionability [of an agreement to arbitrate], we

must use principles of Pennsylvania law, to the extent that such law is not displaced by

the FAA." Quillion v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 230 (3d Cir.

2012). [6] "To prove unconscionability under Pennsylvania law, a party must show that the

contract was both substantively and procedurally unconscionable." Id. at 230 (citing

---

[6] I will apply Pennsylvania law as interpreted by the Pennsylvania Supreme Court. McKenna v. Pac. Rail Serv., 32
F.3d 820, 825 (3d Cir. 1994) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)) ("In so doing, we are not free
to impose our own view of what state law should be; we are to apply state law as interpreted by the state's highest
court."); Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 701 (3d Cir. 1993) (applying Erie to claims under
supplemental jurisdiction). When the Supreme Court has not spoken on the issue, I refer to the decisions of the
Pennsylvania Superior Court and Pennsylvania Commonwealth Court to predict how the high court would rule. See
McKenna, 32 F.3d at 825. Additionally, I will follow Third Circuit's interpretation of Pennsylvania law unless it is
inconsistent with a subsequent holding of the state Supreme or intermediate appellate courts. Aceto v. Zurich Ins.
Co., 440 F.2d 1320, 1322 (3d Cir. 1971) ("No one may properly rely upon what we have held as more than
persuasive on a question of Pennsylvania law so long as the Pennsylvania Supreme Court has not ruled upon that
legal question."); Largoza v. Gen. Elec. Co., 538 F. Supp. 1164, 1166 (E.D. Pa. 1982) ("[I]t is axiomatic that this
court is bound by a decision of the Third Circuit predicating Pennsylvania law unless the state supreme court issues
a contrary decision or it appears from a subsequent decision of the appellate courts that the court of appeals erred.").

Salley v. Option One Mortg. Corp., 925 A.2d 115, 119 (Pa. 2007)). I will use a "'sliding scale approach' so that 'where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required.'" Id. I will address substantive unconscionability first.

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." Id. (citing Germantown Mfg. Co. v. Rawlinson, 491 A.2d 138, 145–47 (Pa. Super. 1985)). An arbitration agreement is substantively unconscionable if it limits the rights and remedies available to the opposing party in the arbitral forum. Id. (citing Edwards v. HOVENSA, LLC, 497 F.3d 355, 364 (3d Cir.2007)). As a matter of federal common law, an arbitration agreement is unconscionable if it "makes the arbitral forum prohibitively expensive for the weaker party…." Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 284 (3d Cir. 2004) (citing Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 269–70 (3d Cir. 2003)). The party opposing arbitration bears the burden of establishing the costs of arbitration and the party's inability to pay those costs. Antkowiak v. TaxMasters, 455 F. App'x 156, 160 (3d Cir. 2011) (citing Parilla, 368 F.3d at 283-85). Typically, the party is entitled to limited discovery on the issue. Parilla, 368 F.3d at 284 (citing Green Tree Financial Cor. Alabama v. Randolph, 531 U.S. 79 (2000)).

Ms. Beavens argues that JAMS Rule 26, which requires each party to pay its pro rata share of JAMS fees and expenses, is unconscionable. While Ms. Beavens does not assert the amount of the fees, there is no need to order discovery to determine the potential costs, because the ADR Agreement specifically limits Ms. Beavens' arbitration

12

costs to $250. Arbitration Agreement, Art. V. Arbitration fees are capped at $250 to approximate the fees to commence an action in court. Id. Ms. Beavens paid $198 to initiate the lawsuit in Berks County. Fee Bill, Berks County Prothonotary, http://www.co.berks.pa.us/Dept/Prothy. I fail to see how a difference of $52 would make JAMS prohibitively expensive considering the additional $100[7] Ms. Beavens spent to perfect sheriff service on Ms. Dunion and Ms. Curry. *See* Blair v. Scott Specialty Gases, 283 F.3d 595, 610 (3d Cir. 2002) (noting that party moving for arbitration can meet its burden by offering to pay the arbitration fees in excess of fees to commence civil action). Ms. Beavens identifies no other substantive issues with the ADR Agreement, and facially, the Agreement does not otherwise limit Mr. Beavens' rights. Accordingly, the ADR Agreement is not substantively unconscionable.

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999) (applying Pennsylvania law). "A contract is procedurally unconscionable where 'there was a lack of meaningful choice in the acceptance of the challenged provision[.]'" Quillon, 673 F.3d at 235 (quoting Salley, 925 A.2d at 119). As this was a form contract prepared by GGNSC, the ADR Agreement is a contract of adhesion. *See* McNulty v. H&R Block, Inc., 843 A.2d 1267, 1273 (Pa. Super. 2004) (defining contracts

---

[7] As previously discussed, Ms. Dunion and Ms. Curry are residents of Pennsylvania. Pennsylvania Rule of Civil Procedure 400 requires "original process shall be served within the Commonwealth by the sheriff." The Berks County Sheriff requires a $100 deposit to serve three or less defendants. Berks County Sheriff, Civil Process Division, http://www.co.berks.pa.us/Dept/Sheriff/Pages/CivilProcess.aspx.

of adhesion). "Factors [I] must consider in determining whether [a] contract [of adhesion] rises to the level of procedural unconscionability include: 'the take-it-or-leave-it nature of the standardized form of the document,' 'the parties' relative bargaining positions,' and 'the degree of economic compulsion motivating the adhering party.'" Quillon, 673 F.3d at 235-36 (quoting Salley, 925 A.2d at 125).

Ostensibly, this was not a take-it-or-leave-it deal. In capital letters at the top of the first page, the ADR Agreement advises, "THIS AGREEMENT IS NOT A CONDITION OF ADMISISON TO OR CONTINUED RESIDENCE IN THE FACILITY." Under Article IX, Ms. Beavens affirms her understanding that the ADR Agreement was not a condition of admission. Additionally, Ms. Beavens' ability to revoke the ADR Agreement within 30 days of signing it supports a finding that she was free to reject its terms. ADR Agreement, Art. IX. The first factor suggests the contract is not procedurally unconscionable.

As to the second factor, Ms. Beavens argues that she did not share equal bargaining power because she did not have the advice of counsel. To the contrary, by signing the ADR Agreement, Ms. Beavens "underst[ood] that … she ha[d] the right to seek advice of legal counsel…." ADR Agreement, Art. IX. If Ms. Beavens desired the assistance of counsel, she could have consulted an attorney before signing the ADR Agreement or within the 30 day revocation period. The fact that Ms. Beavens did not have representation is unpersuasive. Cf. Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983) ("[F]ailure to read the contract is an unavailing excuse….").

Ms. Beavens also maintains that she was in a weaker position due to the "circumstances attendant to admitting an ailing [parent] into a long-term care facility." Pl.'s Resp. to Mot. to Compel, doc. no. 16-1, at 10. I agree that a person in Ms. Beavens' position is vulnerable. As a result, a contract of adhesion for admission to a nursing home will always have some degree of unconscionability. However, that does not mean that a contract, like the one at issue here, can never be enforced. *See* Quillon, 673 F.3d at 235 ("Contracts cannot be deemed unconscionable simply because of disparity in bargaining power…. Our role is to distinguish acceptable bargaining situations from those which violate strong public policy." (internal citations and quotation marks omitted)). Perhaps in recognition of the resident's weaker position, the ADR Agreement includes a number of safeguards. The document is short and contains no fine print. It can be easily understood by a person with no legal training. Furthermore, as I have already discussed, the ADR Agreement advises the resident that signing the Agreement is not a condition of admission, and the Agreement is freely revocable within 30 days. These safeguards outweigh any unfairness inherent in the admission of nursing home residents.

Ms. Beavens makes no allegations upon which I can evaluate the third factor which typically applies in employment contract cases. *See* Quilloin, 673 F.3d at 236-37 (discussion employment contract cases). It is hard to imagine how Ms. Beavens was economically compelled to place her father at a GGNSC facility. Presumably, GGNSC has a number of similarly priced competitors. On the basis of the first two factors alone, there is very low, if any, indicia of procedural unconscionability. Using the sliding scale

approach and noting the absence of substantive unconscionability, I conclude that the ADR Agreement is valid.

### c) Scope of the Agreement

I will apply Pennsylvania law to determine the scope of the ADR Agreement. *See* Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 475-76 (1989) (citing Perry v. Thomas, 482 U.S. 483, 493, n. 9 (1987)). By its terms, the ADR Agreement covers "all disputes arising out of or in any way relating to … the Resident's stay at the Facility … that would constitute a legally cognizable cause of action in a court of law…." Pet. ¶ 23; ADR Agreement, Art. III. This language is extremely broad in scope and would appear to require arbitration of the state court negligence action. However, "only parties to an arbitration agreement are subject to arbitration." Pisano v. Extendicare Homes, Inc., 77 A.3d 651, 661 (Pa. Super. 2013); *see also* CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 137 (3d Cir. 2004) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that [it] do so."). Thus, the ADR Agreement only covers claims asserted on behalf of Mr. Beavens.

That the ADR Agreement only binds Mr. Beavens is significant because of the types of claims asserted by his estate in Berks County. Counts one through four demand damages to redress injuries suffered by Mr. Beavens as a result of GGNSC's negligence. The estate brings these claims pursuant to Pennsylvania's survival statute. 42 Pa.C.S. § 8302.[8] "A survival action … is brought by the administrator of the decedent's estate in

---

[8] The Survival statute provides: "All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." 42 Pa.C.S. § 8302.

order to recover the loss to the estate of the decedent resulting from the tort." <u>Kiser v. Schulte</u>, 648 A.2d 1, 4 (Pa. 1994). "A survival action … is not a new cause of action but one which 'merely continues in [the decedent's] personal representatives the right of action which accrued to the deceased at common law because of the tort.'" <u>Tulewicz v. Southeastern Pennsylvania Transportation Authority</u>, 606 A.2d 427, 431 (Pa. 1992) (citing <u>Pezzulli v. D'Ambrosia</u>, 26 A.2d 659 (Pa. 1942)). "The measure of damages awarded in a survival action include the decedent's pain and suffering, the loss of gross earning power from the date of injury until death, and the loss of his earning power-less personal maintenance expenses, from the time of death through his estimated working life span." <u>Kiser</u>, 648 A.2d at 4. Any damages inure to the benefit of the estate and pass according to the terms of the will or intestacy. <u>Patton v. Baltimore & O. R. Co.</u>, 197 F.2d 732, 744 (3d Cir. 1952). In short, the survival claims belong to Mr. Beavens and fall within the scope of the ADR Agreement, and I will compel arbitration of counts one through four.

In count five, Ms. Beavens and her sister Brenda Mack seek damages for the pecuniary losses they suffered by reason of Mr. Beavens' death such as funeral expenses and loss of companionship.[9] This wrongful death claim is created by statute, 42 Pa.C.S. § 8301,[10] and is a separate and distinct cause of action from a survival action. <u>Schwab v. P.</u>

---

[9] While the wrongful death claim is for the benefit of Mr. Beavens' heirs, the estate is the proper plaintiff to prosecute count five. *See* Pa. R. Civ. P. 2202 (a).

[10] The wrongful death statute states in relevant part: "An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery." 42 Pa.C.S. § 8301(a).

J. Oesterling & Son, Inc., 126 A.2d 418, 420 (Pa. 1956). Wrongful death damages "exist **only** for the benefit of the spouse, children and parents of the deceased," §8301(b) (emphasis added), and compensate the heirs for the damages they sustain by reason of the decedent's death. Kiser, 648 A.2d at 4 (citing Tulewicz, 606 A.2d at 431). "The damages recoverable in a wrongful death action include the present value of the services the deceased would have rendered to the family, had she lived, as well as funeral and medical expenses." Id. (citing Burkett v. George, 545 A.2d 985, 987 (Pa. Commw. 1988)). "[W]rongful death is not the deceased's cause of action," Pisano, 77 A.3d at 658 (citing Moyerv. Rubright, 651 A.3d 1139, 1141 (Pa. Super. 1994); rather, it depends on the rights of action which the decedent's heirs possess. Id., at 657 (citing Holmes v. Lado, 602 A.2d 1389, 1391 n. 2 (Pa. Super. 1992).

While the FAA declares a "liberal federal policy favoring arbitration agreements," the FAA "was not intended to render arbitration agreements more enforceable than other contracts." Id. at 660-61 (citing E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002)). A court cannot compel parties to arbitrate "absent an agreement between them to arbitrate that issue." Id. at 661 (citing Elwyn v. DeLuca, 48 A.3d 457, 461 (Pa. Super. 2012)); *see also* Waffle House, Inc., 534 U.S. at 294 ("[T]he proarbitration goals of the FAA do not require [a party] to arbitrate if it has not agreed to do so."). Since a wrongful death action does not belong to the decedent and is not derived from the decedent's rights, a decedent may not waive a wrongful death beneficiary's right to a jury trial. Id. at 660-61. "Allowing the decedent to contract away the rights of third parties who are not the beneficiaries of an arbitration agreement would indeed undo traditional contract

principles and make arbitration agreements much more powerful than other agreements, solely by virtue of the fact that they concern arbitration." N. Health Facilities v. Batz, 993 F. Supp. 2d 485, 493 (M.D. Pa. 2014) (citing Pisano, 77 A.3d at 660-61). Therefore, "an arbitration agreement signed by the decedent or his or her authorized representative is not binding upon non-signatory wrongful death beneficiaries, and they cannot be compelled to litigate their claims in arbitration." Taylor v. Extendicare Health Facilities, Inc., 113 A.3d 317, 320-21 (Pa. Super. 2015) (citing Pisano, 77 A.3d at 660-61).

Both Pisano and Taylor considered ADR Agreements between a nursing home and its deceased resident, and their application to this case is unavoidable. Mr. Beavens could not alienate his daughters' rights to a wrongful death recovery; therefore, Ms. Beavens' and her sister's claim is outside the scope of the ADR Agreement. GGNSC seems to concede this point. *See* Pet.'s Surreply Br., doc. no. 20, at 8 ("[Pisano] does not preclude enforcement of the [ADR Agreement] to the survival claims here, because the FAA and Supreme Court case law require the wrongful death claim to be severed and stayed to the extent necessary to enforce the arbitration agreement."). I will not compel Ms. Beavens and Ms. Mack to arbitrate their wrongful death claim against GGNSC.

### d) **Rule 213(e)**

Since the ADR Agreement covers the survival action but not the wrongful death action, Ms. Beavens moves to consolidate both actions for trial pursuant to Pennsylvania Rule of Civil Procedure 213(e). The rule provides:

> A cause of action for the wrongful death of a decedent and a cause of action
> for the injuries of the decedent which survives his or her death may be

enforced in one action, but if independent actions are commenced they shall
be consolidated for trial.

Pa.R.C.P. 213(e). Since Rule 213 would prevent the execution of the valid ADR

Agreement, it is preempted by the FAA and has no effect on this case.[11]

The FAA "is a congressional declaration of a liberal federal policy favoring

arbitration agreements, notwithstanding any state substantive or procedural policies to the

contrary." Perry v. Thomas, 482 U.S. 483, 489-90 (1987). The FAA creates a body of

substantive federal arbitration law, Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388

U.S. 395, 405- 406 (1967), which preempts state rules that "require a judicial forum for

the resolution of claims which the contracting parties agreed to resolve by arbitration."

Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). While an arbitration agreement is

revocable "upon such grounds as exist at law or in equity for the revocation of any

contract," 9 U.S.C. § 2, "[t]he 'grounds' available … [do not] include a State's mere

preference for procedures that are incompatible with arbitration and would wholly

eviscerate arbitration agreements." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740,

1748 (2011) (citations omitted). Therefore, state rules which interfere with or stand as an

obstacle to the execution of a valid arbitration agreement are preempted by the FAA. *See*

Id. at 1748, 1753 (citing Hines v. Davidowitz, 312 U.S. 52, 67 (1941)); *see also* Volt

Info. Sciences, Inc., 489 U.S. at 472 (1989) ("[T]he FAA … pre-empts application of

state laws which render arbitration agreements unenforceable….").

---

[11] Since this case is in federal court by reason of diversity of citizenship, it would appear that the Erie Doctrine
would resolve whether Rule 213 applies to this case. However, the FAA establishes a body of substantive federal
law. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 405-06 (1967). Federal law provides the rules of
decision in FAA actions, and the Erie doctrine does not apply. *See* Id.; Moses H. Cone Memorial Hosp., 460 U.S. at
23 ("[F]ederal law provides the rule of decision on the merits….").

Rule 213 is an expression of the Commonwealth's interests in the streamlined resolution of survival and wrongful death claims, but this policy must give way to the FAA's overriding goal to "ensure judicial enforcement of privately made agreements to arbitrate." AT&T Mobility LLC, 131 S. Ct. at 1749 (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219 (1985)). "While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage 'was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered.'" Volt Info. Sciences, Inc., 489 U.S. at 478, (1989) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220 (1985)). Thus, I must compel arbitration even when it will result in piecemeal and possibly inefficient litigation. See Moses H. Cone Mem'l Hosp., 460 U.S. at 20 ("[The FAA] requires piecemeal resolution when necessary to give effect to an arbitration agreement."); Dean Witter Reynolds, Inc., 470 U.S. at 217 (holding that court's must compel arbitration "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums"); Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 309 (3d Cir.2009) ("The FAA requires piecemeal litigation where necessary, irrespective of any concomitant decline in judicial efficiency….").

Rule 213 is an obstacle to the objectives of the FAA in this case. The rule would require GGNSC to litigate the estate's survival claim in court, thus, elevating Pennsylvania's preferred procedures over a valid ADR Agreement. Such a result clearly "stands as an obstacle to the accomplishment and execution of the full purposes" of the FAA. AT&T Mobility LLC, 131 S. Ct. at 1753 (citing Hines v. Davidowitz, 312 U.S. 52,

67 (1941)). Mr. Beavens and GGNSC agreed to a valid and enforceable ADR Agreement as to the estate's survival claims, and arbitration should be compelled as to counts one through four. The fact that Ms. Beavens and her sister cannot be compelled to arbitrate the wrongful death claim cannot stop arbitration of the survival action. The claims must be bifurcated to accomplish the goals of the FAA. Moses H. Cone Mem'l Hosp., 460 U.S. at 20. Rule 213's mandate to the contrary is preempted.

Ms. Beavens maintains that I should follow the Pennsylvania Superior Court's recent decision in Taylor which held that Rule 213 is not preempted by the FAA. 113 A.3d at 325. According to Taylor, a state rule is preempted only when it categorically prohibits the arbitration of specific claims; whereas, Rule 213 is generally applicable to all contracts and is neutral as to arbitration. Id. However, this is an unnecessarily narrow view of controlling Supreme Court precedent. Taylor relied on AT&T Mobility LLC which opined "[w]hen state law prohibits **outright** the arbitration of a **particular** type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." 131 S. Ct. 1740, 1747 (2011) (emphasis added) (citing Preston v. Ferrer, 552 U.S. 346, 353 (2008)). This statement was not meant to limit the FAA's preemptive effect to statutes which expressly prohibit arbitration. The AT&T Mobility LLC Court went on to explain that the analysis only becomes more complicated, i.e. less straightforward, when the prohibition is not evident on the face of the state rule. Id. Thus, AT&T Mobility LCC adopted a more expansive view of preemption than that advanced in Taylor. AT&T Mobility LLC, 131 S.Ct. at 1747 ("[T]he FAA's preemptive effect might extend even to grounds traditionally thought to exist at law or inequity for the revocation of any

contract." (internal citations and quotations marks omitted));[12] *See also* <u>Generational Equity LLC v. Schomaker</u>, 602 Fed.Appx. 560, 563 (3d Cir. 2015).[13]

      I will not be guided by the Superior Court's decision in <u>Taylor</u>. Not only is its interpretation of the FAA incorrect, it was unnecessary to its ultimate holding and is dicta. *See* <u>In re Friedman's Inc.</u>, 738 F.3d 547, 552 (3d Cir. 2013) (defining dicta). Unlike Mr. Beavens' ADR Agreement, the <u>Taylor</u> arbitration agreement expressly provided that it was governed by Pennsylvania's Uniform Arbitration Act (PUAA). *Compare* ADR Agreement, Art. VI (choosing the FAA as the applicable law) *with* <u>Taylor</u>, 113 A.3d at 325. Thus, the Superior Court's exposition of FAA case law was irrelevant and unnecessary to the resolution of the PUAA claim. *Cf.* <u>Volt Info. Sciences, Inc.</u>, 489 U.S. at 472 ("Where, as here, the parties have chosen in their agreement to abide by the state rules of arbitration, application of the FAA to prevent enforcement of those rules would actually be inimical to the policies underlying state and federal arbitration law…." (internal citations and quotations marks omitted)). In any event, I am not bound by Superior Court's interpretation of the FAA. *See* <u>United States v. Bedford</u>, 519 F.2d 650, 653 (3d Cir. 1975) ("It is a recognized principle that a federal court is not bound by a

---

[12] <u>Taylor</u> is in line with the test advocated by the dissent in <u>AT&T Mobility LLC</u>. 131 S. Ct. at 1757 (Breyer, J. dissenting) ("The <u>Discover Bank</u> rule does not create a blanket policy in California against class action waivers in the consumer context. Instead, it represents the application of a more general unconscionability principle." (internal citations and quotations marks omitted)). Thus, <u>Taylor</u> is contrary to controlling Supreme Court precedent.

[13] Although not precedential, <u>Generational Equity LLC</u> is instructive here. In that case, the Court of Appeal found that 15 Pa.C.S. § 8587 was preempted by the FAA. The statute prevents a corporation from instituting a civil action until it has registered with the Secretary of the Commonwealth to do business in Pennsylvania. While the statute had general application to all lawsuits and all contracts, it prevented the plaintiff from enforcing a valid arbitration award. Thus, the Third Circuit adopted a more expansive view of preemption. The statute did not specifically prohibit the arbitration of a particular claim; rather, it interfered with the goals of the FAA.

state court's interpretation of federal laws …."). Thus, Taylor does not change my determination that the FAA preempts the application of Rule 213 to this case.

### e) **Mandatory Stay**

Having found that the estate's survival claims are subject to a valid and enforceable arbitration agreement, I must compel arbitration and stay the Berks County proceedings as to counts one through four. Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003) ("A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." (9 U.S.C. §§ 3–4)). However, I have discretion to deny a stay of count five since Ms. Beavens and her sister are not bound by the arbitration agreement. Zimmerman v. Int'l Companies & Consulting, Inc., 107 F.3d 344, 346 (5th Cir. 1997) ("[T]he mandatory stay provision of the FAA does not apply to those who are not contractually bound by the arbitration agreement."); Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 441 (2d Cir. 1964) ("Granting of the stay cannot be justified under the terms of the Arbitration Act. Defendants are not parties to the arbitration agreement."). "In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 21 n. 23. "That decision is one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket." Id. (citing Landis v. North American Co., 299 U.S. 248, 254–255 (1936). Upon granting this motion to compel in part, the survival claim will go to arbitration and the wrongful death proceeding will

continue in the Berks County Court of Common Pleas. I am in no position to tell the state court judge how to manage his or her docket.[14] Therefore, I will deny the motion to stay count five without prejudice.

**IV     Conclusion**

For the foregoing reasons, I will deny the motion to dismiss, and I will grant the motion to compel in part. The estate must arbitrate its survival claims which are counts one through four of the Berks County lawsuit. The state court action is stayed as to those four counts. Count five, the wrongful death action, may proceed to discovery in state court; however, the state court has discretion to stay count five as well.

An appropriate order follows.

---

[14] This result also flows from the Anti-Injuction Act. 28 U.S.C. § 2283. As I am not compelling arbitration, I do not need to stay count five in aid of my jurisdiction or to effect a judgment. *See, e.g.*, Thompson, 2015 WL 1932330 at *6.